## ASHLEY v. HOLMAN.

1. WILL—CAUSE OF ACTION.—Under the will here, no cause of action accrued to executors to assess property of devisees to support lunatic until exhaustion of "Stallings fund."

2. EQUITY—IBID.—When in an equity suit two results are sought, the right of action does not fall, because one cause of action has not accrued, if the other is well founded.

3. WILL—EQUITY—LIMITED POWER.—POWER conferred on executors to make "a fair and equal assessment" upon the property for the support of a lunatic son, is a limited power, and under control of the Court of Equity.

4. THE ASSESSMENT in question was without authority, and the executors are required to make another subject to conformation by Court.

Before BUCHANAN, J., Barnwell, July, 1898. Modified.

Motion by L. A. Ashley and the heirs of Mary C. Bush, in case of Wm. Ashley, the younger, a lunatic, by his committee, L. A. Ashley, and in his own right, against W. A. Holman and W. A. Bailey, executors of Wm. Ashley, the elder, and in their own right, and all of the devisees of Wm.

Ashley, the elder. The clause of the will in question is as follows: "I consider that my afflicted son, William, is sufficiently provided for in the estate he derived from his grand-father, Josiah Stallings, and therefore make no provision for him in my will; but should the estate derived from his grand-father in any manner fail him, or should he from any other cause lack a proper support and maintenance, I direct my executors by a fair and equal assessment upon the property given to my children and grand-children by this will to raise a sum sufficient for a decent support of my son, William."

From order of Circuit Judge all defendants, except heirs of Mary C. Bush, appeal.

*Messrs. Patterson & Holman,* for appellants, cite: *Circuit Judge had no power to require master to make assessment:* Bail. Eq., 509; 31 S. C., 183.

*Messrs. Bellinger, Townsend & O'Bannon,* of counsel for appellant, cite: *Court should have dismissed the action, because the cause of action had not accrued—the "Stallings fund" not being exhausted:* 54 Ill. App., 644; 60 Miss., 733; 85 Ala., 61; 17 Mo. App., 481; 4 Wis., 300; 57 Ill. App., 139; 8 Atl. R., 826; 7 Tenn., 296. *Error to require an assessment until Stallings fund was exhausted:* 30 N. H., 50; 55 Ga., 329; 22 Mo. App., 12; 5 N. H., 225; 6 Johns., 44; 94 N. C., 447.

*Messrs. Henderson Bros.,* contra, cite: *The power of assessment is a limited and special power:* 1 Rich. Eq., 38; Bail. Eq., 527; 11 Rich. Eq., 199; 1 Rich. Eq., 324.

May 9, 1899. The opinion of the Court was delivered by

Mr. Justice Pope. By the judgment of this Court in the above named action, rendered on 16th day of April, 1895, and reported in 44 S. C., at pp. 160-168, inclusive, the judment of the Circuit Court was modified by requiring L. A. Ashley to account before the master for certain funds of

his *cestui que trust,* which he had improperly allowed the administrator of his predecessor in the office of committee of William Ashley, the younger, to absorb by illegal payments; the principles underlying the accounting were stated; the said L. A. Ashley, as committee, was to be given credit in his accounts after the date of 22d day of June, 1892, for the sum of $515 each year, as compensation for his care and maintenance of his *cestui que trust,* William Ashley, the younger; and also that when the said annual payment of $515 should exhaust the estate of the said William Ashley, the younger, derived from what is known as the "Stallings fund," that then the said L. A. Ashley, as committee, is allowed to demand that the executors of the last will of William Ashley, deceased, shall during each year assess, collect and pay over to him, as said committee, the said sum of $515; and in case any one of the legatees and devisees under the will of William Ashley, the elder, shall fail to pay the amount assessed against him or her by the said executors, the master, under the process of the Court therefor, should sell such legacies and devises to raise the respective assessments of such children and grand-children of William Ashley, deceased, for the support of the lunatic, William Ashley, the younger. Accordingly, A. Howard Patterson, Esq., as master for Barnwell County, recast the accounts of L. A. Ashley, the committee, and found that the said L. A. Ashley, as said committee, had in his hands as the estate of his *cestui que trust,* on the 22d February, 1896, the sum of $59.67. No exception was taken to this report. On the 30th day of June, 1898, the attorneys for the plaintiffs gave the following notice: "Please take notice that upon the call of the equity docket at the ensuing term of the Court at Barnwell, we will, upon the affidavits of L. A. Ashley and L. A. Bush, herewith served upon you, and upon the pleadings and proceedings herein, and especially upon the former assessment of the executors of Wm. Ashley, move the presiding Judge in open Court for an order of reference to the master to take testimony and make an assessment upon the property de-

vised by the testator, Wm. Ashley, to his children and grand-children, under his will, to pay the amount now due for the support of the lunatic, Wm. Ashley, the younger, as reported by the master."

"State of South Carolina, County of Barnwell. Personally appeared L. A. Ashley, who, being duly sworn, says: That he is the committee of Wm. Ashley, the lunatic, who lives with him; that no part of the allowance due under the decree of the Court has been paid, and he has no means of support. That the assessment made by the executors of Wm. Ashley is not fair and equal; that as to his lands, which came to him by the will of Wm. Ashley, it is assessed by the executors at 700 acres, and valued at $10,000, whereas in fact, by actual survey at which he has sold it, there are but 552 acres. Deponent says when he received this land under the will it was a very poor and unimproved place; it came to him about 1870. He lived on it about eighteen years, and has improved it a great deal; he has built on it a gin house, saw mill, engine and boiler, store, stable and barns, and added six rooms to the house; also built several tenant houses; these improvements actually cost deponent not less than $5,000. Deponent was among the first in Barnwell County to put up a steam cotton gin on his place for ginning cotton, and for about six years he received seed from about five or six hundred bales as toll for ginning, and all of this he put as a fertilizer on the place, which greatly improved the place. The testator in his lifetime sold this place to Barney Cave for about $2,500. Cave went on the place, and after one year gave it up to the testator. The testator put this deponent on the place in 1870; that year he attended to gathering the rents for the testator, and deponent knows that the tenants made on the place that year not over 1,100 pounds of seed cotton, and the corn crop was very poor. It was an ordinarily good year. After the deponent had lived on the place and improved it, he sold it to Buford for $10,000, on ten years' time, without interest, in yearly instalments of $1,000; that sale included some goods in store and

farming utensils. L. A. Ashley. Sworn to before me, this 29th day of June, 1898. D. S. Henderson, N. P. of S. C."

"State of South Carolina, County of Aiken. Before me personally appeared L. A. Bush, who, being sworn, says: That the assessment made by the executors of the estate of Wm. Ashley, deceased, for the maintenance of Wm. Ashley, the younger, does the heirs of Mary G. Bush, deceased, great injustice; first, by assessing her 600 acres of land instead of 524 acres; second, by valuing her lands at about $9 per acre, while lands of the other heirs in the same township, equally as good or better, are only valued at $2 per acre and less; and he further says that W. A. Holman and W. A. Bailey, the executors have acknowledged to him that the lands belonging to the heirs of Mary C. Bush have been appraised too high, and that they both were willing to have it reduced, or all of the lands belonging to the estate of Wm. Ashley, deceased, equalized. He further says that the lands belonging to Mary C. Bush, deceased, have been and are assessed on the tax books at $3.50 per acre, and the lands of W. A. Bailey, Mrs. Jennie Miller, and S. J. Bailey, heirs of the estate of William Ashley, deceased, and lying in the same township, are assessed at $3.75 and $4 per acre. L. A. Bush. Sworn and subscribed to before me, this 24th day of June, 1898. James A. Bush, Notary Public."

Accompanying these papers was the assessment of the lands of the children and grand-children of Wm. Ashley, the elder, made by the executors just after Judge Townsend's decree on Circuit had been made, and before the same was modified by this Court. By the assessment, the lands of L. A. Ashley were assessed as being worth $10,000 and those of Mrs. Bush as worth $5,400, while all the other lands were assessed at lower figures. The matters came on to be heard before Judge Buchanan, who passed the following order: "Upon the notice of motion herein, and the affidavits and documents produced, and the pleadings and proceedings in this action, after hearing Messrs. Henderson Bros. for the plaintiffs, and Messrs. Patterson & Holman for the defend-

ants (the defendants' counsel taking the position that the relief asked for, and the assessment to collect the allowance due the lunatic, could not be made in this action, but must be by a new action, also that the discretion given to the executors under the will of the testator cannot be controlled by the Court), it is ordered, that it be referred to the master of this Court to take testimony and to report what would be a proper assessment under the tenth clause of the will of the late William Ashley upon the property given to the beneficiaries therein mentioned and who are parties to this action, and to state the respective assessments upon the respective pieces of property, considering their valuation at the time the said property came respectively to the said parties, in order to raise the amount already reported by the master as due for the allowance to the lunatic, and what would be due upon the same basis up to the date of the report of the master. It is further ordered, that when the master shall have made said report, the plaintiff in this action be, and he hereby is, authorized to apply to this Court for an order for the sale of the property of the respective parties who do not within twenty days after the confirmation of the report of said master pay their respective assessments."

From this decree of Judge Buchanan the defendants, except the heirs of Mary C. Bush, have appealed, and by their appeal virtually raise these questions: First. Was not the Circuit Judge in error in entertaining any question raised by the plaintiffs herein, whereas the report of the master, which was not excepted to, showed that there was no deficiency of assets in the hands of the plaintiff, as committee, when he brought this action on 22d June, 1892? Second. If the Circuit Judge was not in error in failing to dismiss the plaintiffs' action after master's report, made on 22d February, 1896, was he not in error in interfering with the exercise of the discretion of the executors of Wm. Ashley, the elder, under the 10th clause of his will?

The first question presented by the appellants is not without difficulty. Unquestionably the plaintiffs' right of action

9—55

must have existed on June 22d, 1892, which was the date of the commencement of the action.　Under the decision heretofore made, and as the same was developed by the master's report of 22d February, 1896, the plaintiffs had no right to call upon the executors to make any assessment upon the legacies and devisees of the children and grand-children of Wm. Ashley, the elder, for the support of William Ashley, the younger, until after the 22d February, 1896.　If nothing else existed as plaintiffs' right of action, there appears to be considerable force in the position of the appellants.　If our attention were only to be given to this part of the plaintiffs' cause of action, plaintiffs must need be dismissed.　But it must be borne in mind that the plaintiffs also sought the aid of the Court, in their action, in providing a larger allowance for the maintenance of the lunatic each year than had previously been fixed by the Court of Equity, and this relief has been accorded the plaintiffs in this very action.　Such being the case, we cannot say the plaintiffs' right of action, as it existed in June, 1892, has entirely failed.　So this position of appellants is untenable.

Appellants next contend that the Circuit Judge was in error, as embodied in the second proposition heretofore stated.　If the power conferred upon the executors of the will of William Ashley, the elder, in making the assessment of the legacies and devises in the children and grand-children of said William Ashley, the elder, was a general power—that is, something confided by the testator to the absolute discretion of the executors—it would, no doubt, present a very difficult matter to this or any other Court, when such discretion was endeavored to be controlled; but we do not look upon the power of these executors in levying the assessment in question as a general power; on the contrary, by the 10th clause of the will, the executors are required, *"by a fair and equal assessment of the property* given to my children and grand-children by this will to raise a sum sufficient for the decent support for my

son, William" (italics ours). It will be noticed that such said assessment is required to *be a fair and equal assessment*. What, therefore, is there to prevent the Court of Equity, in controlling the exercise of this power by the executors, in order that such an assessment so made by them shall be fair and equal? In *Fronty* v. *Fronty,* Bailey Eq., 521, Judge O'Neall, speaking for the Court, said: "Powers may be general or limited. In the execution of a general power, there can be no rule but the discretion of the party to whom it is confided. In a limited one, the limitations contained in it constitute the rule by which it is to be executed. In the former, no Court can undertake to control that, which the party creating the power intended to leave to the honesty, good faith and discretion of the person to whom he confided it. In the latter, the Courts do no more than execute the intention of the party by whom it is created, by declaring the execution of the power contrary to the limitations contained in it, void." See, also, the case of *Anderson* v. *Butler,* 31 S. C., 183. We fail to discover any difficulty in the case at bar for a Circuit Judge to interfere with the improper exercise of a limited power by these executors. Still, we see no reason why the executors should not be required to execute this power; their first attempt to do so was without authority, because Judge Townsend's order for them to make the assessment was set aside by this Court.

We must, therefore, modify the Circuit decree so that these executors shall be required to make the assessment in question, and not the master. So, also, that part of the decree that requires the sale of property after twenty days failure to pay the assessment, must be upset, because that time is too short. Another matter must be considered by us, and that is that the plaintiff, L. A. Ashley, in his affidavit states that he has sold the lands devised to him by his father to one Buford, who is now in possession of the same; it seems to us that said Buford should be a party to these proceedings. There may be others, who may have sold their

lands; if so, the plaintiffs should be required to amend the whole complaint, alleging such sales and making all such alienees parties defendant, including Buford, and that such amendment shall be made in thirty days after the *remittitur* reaches the Circuit Court. When these amendments have been made, then let the executors assess each of the tracts of land devised by Wm. Ashley, the elder, to his children and grand-children, no matter in whose hands, as owners, the same may be; and let such assessment be made within thirty days after the amendments have been made to the complaint and filed in the office of the clerk of the Circuit Court for Barnwell County. After such assessment has been made and filed, either party, plaintiff or defendants, may, upon ten days' notice, apply to the Circuit Court for confirmation of such assessment by the executors; and if any party to the action, either as child, as grand-child, or as an *alienee* of such child or grand-child, shall fail to pay to the master of Barnwell County the sum assessed each year for the maintenance of such lunatic, William Ashley, the younger, for sixty days after notice to him or her of such assessment, then and in that event, an application may be had, upon ten days' notice, to the Circuit Judge for an order to sell said lands of the person so neglecting to pay the assessment made against him or her, on such terms as to the Circuit Judge may seem proper.

It is the judgment of this Court, that the order appealed from be modified as herein required, and thereafter in all other respects be affirmed.